UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERI LYNN MELLIAN,

    Plaintiff,                                          Case No. 14-10867

v.                                                       Hon. Gerald E. Rosen

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

    Defendant.
_____/

**OPINION AND ORDER REGARDING
PLAINTIFF'S MOTION FOR LIMITED DISCOVERY
AND DEFENDANT'S CROSS-MOTION FOR PROTECTIVE ORDER**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on      December 24, 2014

PRESENT:  Honorable Gerald E. Rosen
                     Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiff Teri Lynn Mellian is a former employee of Unistrut International Corporation ("Unistrut"), a division of Atkore International, Inc. Defendant Hartford Life and Accident Insurance Company is the insurer of a policy known as the "Group Long Term Disability Plan for Employees of Atkore International, Inc." (the "Plan"), an employee benefit plan that is subject to the terms of the federal Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Through the present suit commenced on February 24, 2014, Plaintiff has asserted a claim under § 501(a)(1)(B)

of ERISA, 29 U.S.C. § 1132(a)(1)(B), requesting that the Court reverse a decision by the Defendant insurer to deny Plaintiff's claim for long term disability benefits under the Plan.

In *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 619 (6th Cir. 1998), the Sixth Circuit adopted a set of guidelines for conducting judicial review of a plan administrator's decision to deny benefits under an ERISA plan. As pertinent here, *Wilkins* holds that a district court's review of such a decision ordinarily should be "based solely upon the administrative record," and that a district court may stray beyond the four corners of this administrative record only to consider evidence "offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Wilkins,* 150 F.3d at 619. As a corollary to this rule, the Sixth Circuit has held that discovery typically is not available in an ERISA action contesting a denial of benefits, unless it is deemed necessary to support a procedural challenge to the administrator's decision. *Wilkins,* 150 F.3d at 619; *see also Calvert v. Firstar Finance, Inc.,* 409 F.3d 286, 293 n.2 (6th Cir. 2005).

In a motion filed on April 24, 2014, Plaintiff seeks leave of the Court to conduct the limited discovery permitted under *Wilkins* and its progeny, arguing that this discovery is needed to pursue Plaintiff's allegations of procedural irregularities, bias, and conflict of interest on the part of the Defendant claims administrator. Defendant filed a response in opposition to Plaintiff's motion on May 8, 2014, as well as a cross-motion for a protective

order prohibiting any discovery in this suit. Having reviewed the parties' briefs in support of and in opposition to these cross-motions,[1] as well as their accompanying exhibits and the remainder of the record, the Court finds that the relevant allegations, facts, and legal issues are sufficiently presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide the parties' cross-motions "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on these motions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff commenced her employment with Unistrut on November 20, 2000, initially working as an administrative assistant to the plant manager at Unistrut's manufacturing facility in Wayne, Michigan, and later holding a position in the accounting department. As a Unistrut employee, Plaintiff was eligible for coverage under the Plan issued by the Defendant insurer to Unistrut's parent corporation, Atkore International.

---

[1] Beyond the usual sequence of initial, response, and reply briefs, Defendant has sought leave to file a sur-reply brief in further opposition to Plaintiff's motion for discovery. As Defendant recognizes, however, a sur-reply is appropriate only where the opposing party raises new arguments or presents new evidence for the first time in a reply brief, such that the party seeking leave to file the sur-reply had no opportunity to address the arguments or evidence in its prior submissions. *See Mirando v. United States Department of Treasury,* 766 F.3d 540, 548-49 (6th Cir. 2014). Having carefully reviewed Plaintiff's reply brief, the Court is not persuaded that Plaintiff has advanced any new arguments or proffered any new evidence that would warrant a sur-reply. In any event, because the arguments identified by Defendant as "new" have played no role in the Court's disposition of Plaintiff's motion for discovery, Defendant has not been prejudiced by any lack of opportunity to address these arguments in a sur-reply. Accordingly, the Court denies Defendant's motion for leave to file a sur-reply brief.

On June 7, 2012, Plaintiff was placed on disability leave as a result of surgery on her right foot, and she was granted short term disability benefits. During this disability leave, Plaintiff had additional surgery on her right foot in November of 2012, and she also continued to experience pain from a back injury she had suffered in a motor vehicle accident several years earlier. Accordingly, Plaintiff applied for long term disability benefits under the Plan, and Defendant approved this request for the period from December 6, 2012 through February 28, 2013. On March 12, 2013, however, Defendant denied Plaintiff's request for continuation of her long term disability benefits, determining that as of March 1, 2013, Plaintiff could perform the essential duties of her occupation on a full time basis.[2]

On June 25, 2013, Plaintiff sought reconsideration of this adverse decision. In support of this administrative appeal, Plaintiff produced additional office notes from her treating foot and back specialists, both of whom opined that Plaintiff was unable to perform the duties of her job. Defendant, in turn, referred Plaintiff's claim for review by a medical consulting firm, MCMC,[3] which designated two physicians to examine Plaintiff's medical records, contact Plaintiff's physicians, and provide opinions as to Plaintiff's "physical restrictions and limitations" and her "ability to perform primarily

---

[2]When Plaintiff failed to return to work following this determination that she was no longer disabled as of March 1, 2013, her employment was terminated.

[3]Plaintiff notes that the correspondence in the record from MCMC indicates that this firm's name is an acronym for "managing care, managing claims," (*see, e.g.,* Defendant's Response, Ex. E, Lobel Report at 1), but that the firm's advertising refers to MCMC as standing for "managing care, managing costs." (*See* Plaintiff's Motion at ¶ 4.)

sedentary level work activities." (*See* Defendant's Response, Ex. E, Lobel Report at 2; Ex. F, Rubinfeld Report at 1.) After each of the two physicians retained by MCMC opined that Plaintiff had the "ability to perform primarily sedentary level work activities," (*see* Lobel Report at 3; Rubinfeld Report at 2), Defendant denied Plaintiff's administrative appeal on August 28, 2013. Having exhausted her administrative remedies, Plaintiff commenced this action on February 24, 2014, challenging Defendant's denial of her claim for long term disability benefits under the Plan.

### III. ANALYSIS

Through her present motion, Plaintiff seeks leave to conduct discovery so that she may explore her allegations that Defendant's denial of her claim for long term disability benefits was tainted by impermissible bias and a conflict of interest. In support of her claim of bias, Plaintiff characterizes the outside medical consulting firm chosen by Defendant, MCMC, as a "hired gun" that "maintains its 'customers' by rubberstamping the opinions of the Plan Administrator." (Plaintiff's Motion at ¶ 5.) As for her claim that Defendant operated with a conflict of interest, Plaintiff points to Defendant's dual role in paying benefits under the Plan and in deciding which claims to pay. Accordingly, Plaintiff requests that she be permitted to propound discovery to Defendant that would shed light on "Defendant's relationship with MCMC, its history of referring claims to that entity, and MCMC's history of affirming[] or contradicting Defendant's decisions concerning whether a claimant is disabled," as well as any guidelines or protocols that govern MCMC's reviews. (*Id.*)

As observed earlier, the Sixth Circuit has held that discovery is available in an ERISA action contesting a denial of benefits only if it is shown to be necessary to support a procedural challenge to the plan administrator's decision. *See Wilkins,* 150 F.3d at 619; *see also Calvert,* 409 F.3d at 293 n.2. Plaintiff, of course, seeks to pursue such a procedural challenge here, citing allegations of bias and conflict of interest. Nonetheless, the Sixth Circuit has emphasized in a number of cases that mere allegations of bias or some other procedural irregularity are "not sufficient to permit discovery under *Wilkins*' exception." *Putney v. Medical Mutual of Ohio,* No. 02-3901, 111 F. App'x 803, 807 (6th Cir. Sept. 10, 2004); *see also Huffaker v. Metropolitan Life Insurance Co.,* No. 07-5410, 271 F. App'x 493, 504 (6th Cir. Mar. 25, 2008) ("A claimant cannot obtain discovery beyond the administrative record — even if limited to a procedural challenge — merely by alleging a procedural violation."); *Likas v. Life Insurance Co. of North America,* No. 06-5124, 222 F. App'x 481, 486 (6th Cir. Mar. 12, 2007). Rather, "a claimant must make a predicate showing with respect to an alleged procedural violation to be granted further discovery." *Huffaker,* 271 F. App'x at 504.

To be sure, the law of this Circuit is not altogether clear as to precisely what sort of showing or evidence a claimant must put forward in order to pursue discovery in aid of a procedural challenge. In *Johnson v. Connecticut General Life Insurance Co.,* No. 08-3347, 324 F. App'x 459, 466 (6th Cir. Apr. 7, 2009), for example, the court viewed the Supreme Court's then-recent decision in *Metropolitan Life Insurance Co. v. Glenn,* 554 U.S. 105, 128 S. Ct. 2343 (2008), as "counsel[ing] against" a hard-and-fast rule that a

claimant must make "a threshold evidentiary showing of bias as a prerequisite to discovery under *Wilkins*." Yet, while the court in *Johnson* affirmed the district court's decision to allow limited discovery as to the defendant plan administrator's conflict of interest, it cautioned that discovery is not "automatically . . . available any time the defendant is both the administrator and the payor under an ERISA plan," and the court further explained that the plaintiff in that case had "offered more than a mere allegation of bias." *Johnson,* 324 F. App'x at 467.

Upon thoroughly surveying the Sixth Circuit decisions addressing the availability of discovery in ERISA actions, as well as rulings on this subject by district courts within this Circuit, Magistrate Judge Scheer of this District aptly observed that "[t]he role of discovery in the process of weighing a conflict [of interest or claim of bias] remains somewhat obscure." *Geer v. Hartford Life & Accident Insurance Co.,* No. 08-12837, 2009 WL 1620402, at *2 (E.D. Mich. June 9, 2009); *see also Price v. Hartford Life & Accident Insurance Co.,* 746 F. Supp.2d 860, 865 (E.D. Mich. Oct. 12, 2010) (likewise stating that this question "remains unsettled" among the district courts in this Circuit). Against this admittedly uncertain backdrop, Magistrate Judge Scheer rejected "the proposition that an inherent decision maker/payor conflict automatically entitles a benefits claimant to discovery," reasoning that "[a]cceptance of that view would effectively eliminate the general rule against discovery in ERISA suits in a substantial portion of such cases." *Geer,* 2009 WL 1620402, at *4. Instead, the court in *Geer* concluded that "discovery should be allowed where a plaintiff has provided sufficient

initial facts suggesting a likelihood that probative evidence of bias or procedural deprivation would be developed." 2009 WL 1620402, at *5. Magistrate Judge Scheer acknowledged the apparent anomaly that "a claimant must *have* some evidence of bias before being allowed to seek such evidence in discovery," but reiterated that "an unconditional right to discovery, in the absence of some predicate showing that it is likely to be productive, would completely eviscerate the general rule against discovery in ERISA benefits review cases and undermine the well recognized legislative intent that the statute provide parties with a prompt a economical means of resolving disputes." 2009 WL 1620402, at *5; *see also Kennard v. Means Industries, Inc.,* No. 11-15079, 2012 WL 3156529, at *4-*5 (E.D. Mich. Aug. 3, 2012) (also electing to follow the line of Sixth Circuit cases requiring a predicate showing of a procedural violation before allowing discovery). *But see Price,* 746 F. Supp.2d at 865 (opining that "[n]o special rules or procedures are necessary or appropriate" for determining whether to permit discovery in an ERISA action, and that the usual standards of Fed. R. Civ. P. 26(b)(1) should instead govern this inquiry).

      This Court is persuaded by Magistrate Judge Scheer's reading of the pertinent case law, and therefore adopts *Geer*'s holding that discovery should be permitted in support of an ERISA claim for benefits only where the plaintiff has "provided sufficient initial facts suggesting a likelihood that probative evidence of bias or procedural deprivation would be developed." *Geer,* 2009 WL 1620402, at *5. As observed in *Geer,* 2009 WL 1620402, at *4-*5, because it is fairly commonplace for the defendant in an ERISA action

to both evaluate claims for benefits and pay the claims that it approves, the bare existence of such a conflict of interest, standing alone, cannot justify discovery without "eviscerat[ing] the general rule against discovery in ERISA benefit review cases." Similarly, a medical consulting firm, such as MCMC here, that is asked to conduct an independent medical examination ("IME") or perform a medical record review will invariably have an economic incentive to "make its customer happy" — and thereby increase the likelihood of repeat business — by providing results favorable to the claims administrator that retained this firm. The Court fully recognizes, of course, that it must take such inherent conflicts and potential biases into account in reviewing a decision to deny benefits. *See Glenn,* 554 U.S. at 115, 128 S. Ct. at 2350; *Kalish v. Liberty Mutual/Liberty Life Assurance Co.,* 419 F.3d 501, 506 (6th Cir. 2005). Nonetheless, the Court finds that absent a predicate showing that discovery is "likely to be productive" in a particular case to shed further light on these considerations, *Geer,* 2009 WL 1620402, at *5, the presence of a conflict of interest or potential bias can be sufficiently accounted for in the Court's review of the administrative record compiled during a defendant claims administrator's evaluation of a plaintiff's claim, without the need for any additional details that a discovery effort might provide.

It remains only to inquire whether Plaintiff in this case has satisfied this standard for pursuing discovery from the Defendant claims administrator, and the Court concludes that she has not. Apart from the bare allegations in Plaintiff's complaint that Defendant has a conflict of interest in light of its dual role as claims administrator and payor of

benefits, and that the medical consultants retained by MCMC to review Plaintiff's medical records were "flatly biased in favor of Defendant," (Complaint at ¶¶ 45(H), (J)), the only evidence submitted in support of Plaintiff's present motion for discovery is a printout of two pages from MCMC's website, (*see* Plaintiff's Motion, Ex. A). In particular, Plaintiff directs the Court's attention to MCMC's statements on its website that its services will "contain[]" or "decrease" the medical costs paid by its clients, and that this firm's "Independent Peer Review division completes over 50,000 reviews each year for more than 400 clients." (*Id.*) These assertions made on MCMC's website, however, merely confirm points that are a matter of public record and do not warrant further exploration in discovery — namely, MCMC touts its ability to limit the costs paid by its clients for claim administration, and points to its position as a "leading independent peer review organization" as evidenced by the many reviews it conducts each year on behalf of hundreds of clients. (*Id.*) Even assuming that these statements might suggest a potential for bias, this surely would not distinguish MCMC from any other for-profit medical consulting firm that has achieved a degree of success in its field.

Beyond these garden-variety promotional claims on MCMC's website, nothing in the record suggests anything other than an ordinary arms-length business relationship between Defendant and MCMC. Most notably, Plaintiff has failed to provide any evidentiary support for her claim that Defendant has developed a "special" form that it uses for referrals to MCMC. (Plaintiff's Motion at ¶ 4.) Neither has Plaintiff identified any irregularity in the process through which Defendant referred Plaintiff's claim to

MCMC for a medical record review, or in the procedures used by MCMC to select and supervise the medical professionals who conducted this particular file review. Rather, from all that appears in the record, Defendant's selection of MCMC for the task of reviewing Plaintiff's medical records appears to have been entirely routine. *See Andren v. The Hartford,* No. 07-12559, 2008 WL 2115165, at *2 (E.D. Mich. May 12, 2008) (observing that "[i]f the existence of a continued business relationship between an insurance company and the group of physicians that reviews it[]s medical files were enough to permit discovery, the exception would swallow the rule and discovery would be permitted in most, if not all, ERISA denial of benefits actions").

Moreover, Defendant correctly observes that further discovery is not needed to explore the specific details of the reviews conducted by MCMC in this case, as the administrative record already sheds sufficient light on these matters. In particular, the existing administrative record includes such materials as the forms used by Defendant to refer Plaintiff's claim to MCMC, (*see* Defendant's Response, Exs. D, H), the invoices issued by MCMC to Defendant, (*see* Defendant's Response, Ex. G), and the case reports produced by the physicians who reviewed Plaintiff's medical records on MCMC's behalf, (*see* Defendant's Response, Exs. E, F). The case reports, in turn, disclose the areas of specialization for the two physicians retained by MCMC, the questions they were asked to consider, their findings on these questions, the records they reviewed, and the results of their efforts to contact Plaintiff's physicians. (*See id.*) In addition, the physicians closed their reports with certifications that they were not operating under a conflict of interest

11

and had no financial or other stake in the outcome of their reviews.  (*See id.*)

The absence of evidentiary support for Plaintiff's allegations of bias and conflict of interest serves to distinguish this case from other ERISA actions for benefits in which discovery was permitted.  Plaintiff points, for example, to the decision in *Price,* 746 F. Supp.2d at 863, where (as here) the plaintiff's medical records were reviewed by a physician retained by MCMC.  In ruling that the plaintiff in that case was entitled to propound discovery in support of her claim of bias, the court observed that the plaintiff's request for discovery was based in part on the "particularly close working relationship" between the defendant insurer and MCMC, "as evidenced by the special referral form created specifically for this organization."  *Price,* 746 F. Supp.2d at 867.[4]  The plaintiff also produced a copy of a California market study that was critical of the defendant insurer's claim handling practices.  746 F. Supp.2d at 867.  Here, in contrast, Plaintiff has produced no such evidence of a close working relationship between Defendant and MCMC, nor does the record include any studies suggestive of systemic procedural defects or irregularities in Defendant's processing of claims.

Similarly, the Court is not persuaded by Plaintiff's appeal to a Magistrate Judge's decision to allow discovery in *Back v. Hartford Life & Accident Insurance Co.,* No. 09-

---

[4]Since Defendant here is the same insurer named as a defendant in *Price,* this statement in *Price* presumably provides the basis for Plaintiff's assertion in this case that Defendant uses a "special form" for its referrals to MCMC.  Yet, while *Price* does not disclose what sort of evidentiary support (if any) the plaintiff in that case might have provided for her claim of a "particularly close relationship" between the defendant insurer and MCMC, the record here lacks any evidentiary foundation whatsoever for Plaintiff's allegation of a "special form" used by Defendant for its referrals to MCMC.

14446, 2010 WL 8938975, at *4-*5 (E.D. Mich. July 1, 2010), *aff'd,* 2010 WL 3518063 (E.D. Mich. Sept. 8, 2010). In support of this ruling, the court noted that the plaintiff in that case had been awarded Social Security disability benefits, and it pointed to the defendant insurer's failure to give any weight to the determination of the Social Security Administration ("SSA") or to provide "*any* substantive explanation of why its findings differed from the SSA's." *Back,* 2010 WL 8938975, at *4. Based on this and other evidence, the court concluded that the plaintiff had "presented much more tha[n] a mere allegation of bias" in support of her request for discovery, but instead had satisfied "the 'predicate showing' test of *Likas* and *Putney.*" *Back,* 2010 WL 8938975, at *5 (internal quotation marks omitted);[5] *see also Geer,* 2009 WL 1620402, at *6 (likewise citing the defendant insurer's failure to address an award of Social Security disability benefits as "sufficient, in concert with the decision maker/payor conflict of interest, to warrant limited discovery as to bias and/or procedural defect").

In contrast to these decisions, Plaintiff's request for discovery in this case rests solely upon mere allegations of conflict of interest and bias, and not upon any predicate

---

[5]To be sure, one piece of evidence cited by the court in *Back* was "promotional material[s]" from MCMC revealing that this firm "perform[s] over 50,000 independent medical reviews (i.e., file reviews) and 18,000 IMEs annually." *Back,* 2010 WL 8938975, at *5. Based on these materials, the court reasoned that "[t]he medical review companies used in this case derive a tremendous financial benefit in service to the insurance industry," and it concluded that "[t]he degree to which those benefits lead to bias in their disability opinions is fair game for discovery." 2010 WL 8938975, at *5 (footnote omitted). As explained earlier, this Court does not view the success of MCMC's medical consulting business, standing alone, as lending support to the possibility that the findings of the medical professionals retained by MCMC in this case were influenced by a desire to render a decision favorable to Defendant as MCMC's client.

13

showing of procedural anomalies in Defendant's decision to deny Plaintiff's claim for benefits.  As discussed, this Court reads the pertinent case law as demanding more than bare allegations to warrant a departure from the typical practice under *Wilkins* of reviewing denial-of-benefit decisions based solely on the administrative record.  Accordingly, because Plaintiff has not made this threshold showing, the Court finds that her request for discovery must be denied.

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's April 24, 2014 motion for order permitting limited discovery (docket #8) is DENIED. IT IS FURTHER ORDERED that Defendant's May 8, 2014 cross-motion for a protective order prohibiting discovery (docket #10) is GRANTED. In light of these rulings, the parties shall file their cross-motions to affirm or reverse the Defendant administrator's decision to deny Plaintiff's claim for long-term disability benefits on or before **February 6, 2015.**

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: December 24, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 24, 2014, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135

15